(115 App. Div. 264)

GRIFFEN et al. v. KEESE et al.

(Supreme Court, Appellate Division, First Department. November 5, 1906.)

1. JUDGMENT—SURROGATE'S DECREE—RES JUDICATA.

On the settlement of the accounts of certain executors, the surrogate directed them to pay to themselves as trustees $400,000 as an annuity fund under the provision of the will directing that a sufficient amount be set aside from which to pay the annuities. No appeal was taken from this determination, which was subsequently recognized by the Court of Appeals in a different proceeding. *Held*, that the surrogate's order was res judicata of the issue as to the amount necessary to obtain the annuities, as against all persons interested who were either parties or represented in the proceedings before the surrogate.

2. TRUSTS—EXECUTION BY TRUSTEE—FUND FOR PAYMENT OF ANNUITIES.

Where a will directed testator's trustees to set apart a sum sufficient to furnish an income to pay certain annuities, and on the death of the annuitants to divide so much of the property among testator's grandchildren as was not required to pay the annuities remaining, the trustees were required to set apart a sum sufficient to pay the annuities without applying any part of the principal for that purpose, regardless of the present value of the annuities.

Appeal from Special Term, New York County.

Judicial accounting by Charles Griffen and others as surviving trustees under the will of Samuel Willets, deceased, to which William L.

Keese and another filed objections. From a judgment in favor of defendants, plaintiffs appeal. Modified.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

Wilson M. Powell, for appellants Griffen and others.

Charles F. Brown, for appellant Mary W. Pell Haggerty.

Henry A. Forster, for respondents Edward and Walter R. Willets and Caroline W. Frame.

Edward E. Sprague, for respondent Amelia W. Leavitt.

INGRAHAM, J. The question presented here arose under the will of Samuel Willets, deceased. The testator died on the 6th day of February, 1883, and his will was admitted to probate on the 28th of February, 1883. The provision of the will under which this question arose provides for certain annuities as follows:

"I give and bequeath the following annuities to be paid annually, and every year during the lives of the respective parties—the first payment to be made one year after the probate of this will."

Then following the annuities granted, aggregating $10,000, the clause continues:

"And I direct my executors to set apart and invest a fund sufficient to produce the above annuities, or a sufficient amount of stocks to be held for that purpose, or a part of each, which fund, and the unappropriated income thereof is, on the decease of the annuitants as they respectively die, to be divided among my grandchildren who shall be living at the time of the death of the respective annuitants, per capita and not per stirpes, only retaining an amount sufficient to produce the required amount of the remaining annuitants."

To carry into effect this provision of the will the executors set apart the sum of $400,000, the income to be applied to the payment of these annuities. Upon the accounting of the executors, the residuary legatees insisted before the surrogate that this was in excess of the amount required to pay the annuities. The surrogate, however, affirmed the action of the executors in setting apart the sum of $400,-000 for this purpose, and a decree of the surrogate was entered on the 29th day of April, 1895, approving such accounts. In that decree it is provided:

"It is further ordered, adjudged, and decreed that the said executors, out of the said balance of principal, pay to themselves as trustees the sum of $400,000 as a fund sufficient to produce the several annuities provided for in said will * * * to be held and applied by them under the provisions of said will relating to said fund."

This decree was not appealed from, and it thereby became binding upon all those interested in the estate as an adjudication that they held this fund as trustees "as a fund sufficient to purchase the several annuities provided for in said will, to be applied under the provisions of the will relating to said fund." In pursuance of this decree, the executors retained, as trustees, the sum of $400,000, and received the income thereof and paid the annuities therefrom. The balance of the income not being necessary to provide for these annuities was paid

over to the trustees' grandchildren under the clause of the will, which provides that:

"The fund and the unappropriated income thereof is, on the decease of the annuitants, as they respectively die, to be divided among my grandchildren who shall be living at the time of the death of the respective annuitants, per capita, and not per stirpes."

In 1886 the trustees commenced a proceeding in the Surrogate's Court for an accounting, which included an accounting of the annuity fund. The residuary legatees again interposed objections to that accounting, repeating the objection that the sum of $400,000 was in excess of that necessary to pay the annuities. This contention was overruled by the surrogate, from which an appeal was taken to the General Term of the Supreme Court (In re Willets' Estate, 42 Hun, 658), where the decree of the surrogate was affirmed. Whereupon the residuary legatees appealed to the Court of Appeals, where the decree was affirmed (112 N. Y. 289, 19 N. E. 690). In speaking of this annuity fund, the Court of Appeals said:

"It is further claimed that the $400,000 set apart to raise the annuities is too large a sum, and that a portion of it should be restored to the residuary fund. It was the duty of the trustees to set apart a sufficient sum to produce the annuities, and the fund should be so large as to provide against all reasonable contingencies, and to make sure that it would produce a sufficient sum to pay the annuities. The surrogate, on the accounting of the executors, determined that the $400,000 should be set aside for that purpose. That determination has never been appealed from, and cannot now be reviewed or reversed upon this appeal. But, even if it should be, we would feel indisposed to interfere with it. If experience shall in the future demonstrate that the fund is more than sufficient to produce the annuities, the trustees are still under the control of the courts, and may by proper action of the surrogate or of some other court be compelled to reduce the amount, and restore a portion thereof to the residuary fund."

Subsequent to this accounting, as the annuitants died, the trustees distributed the surplus income and the proportionate amount of the sum among the grandchildren of the decedent living at the time the annuitants died. Subsequently, and in the year 1890, the trustees commenced an action in the Supreme Court for an accounting. This resulted in a judgment entered on the 9th of February, 1891. In that judgment it was determined:

"That the balance of the principal of the annuity trust fund, shown by said account to be still in the hands of the plaintiffs, as trustees of said fund, to wit, $284,673.54, consisting of bonds and mortgages and cash, as shown by said account, be held by them subject and pursuant to the terms of said will, and subject to the future direction of any competent court. Since the entry of this decree other of the annuitants have died, and at the time of the commencement of this action the surviving annuitants were entitled to receive the sum of $5,200 per year. To furnish this amount, the trustees hold as principal the sum of $272,557.67; $263,621.04 having been the amount directed to be held by them under the judgment to which attention has been called, and $8,936.63, being the increase in the value of the securities in which that fund is invested."

A descendant of one of the surviving grandchildren of the testator claimed before the court below that this sum of $400,000 was proved by the subsequent development to have been in excess of the amount

required to pay these annuities; and demanded that the amount in excess of that actually required be returned to the residuary estate of the testator, and distributed among those entitled to a distributive share of the residuary estate. The surviving grandchildren of the testator claim that the amount in excess of that required to be held by the trustees to provide for the remaining annuities should be distributed among the grandchildren of the testator. This question becomes important, because it appears that since the death of the testator one of the testator's grandchildren has died leaving issue, and if the amount in excess of that required to provide for the annuities is treated as a part of the fund set apart to provide these annuities, and is distributed under the clause of the will providing for the annuities, the issue of the deceased grandchildren would not be entitled to participate. If this excess was treated as a part of the residuary estate, the children of the testator's grandchild would be entitled to participate. I agree with the court below that the question as to the necessity of setting aside this sum of $400,000 to provide for these annuities is res judicata, and, as between those entitled to the residuary estate, and those entitled to a distribution of the fund held to provide for these annuities, the question has been judicially settled that the sum of $400,000 was, at the time of the action of the trustees, necessary to provide for these annuities. The question as to that amount was before the surrogate upon the executors' accounting. The amount necessary for that purpose had, then, to be determined. The testator directed his executors to set apart and invest a sum sufficient to produce the annuities, or a sufficient amount of stock for that purpose. This required immediate action by the executors, and they were to determine what sum was sufficient for that purpose. That sum they determined to be $400,000. That action, of course, was subject to review on the settlement of the executor's accounts; and on such settlement the court determined that that amount was necessary to carry this direction of the testator out, and directed the executors to hold and apply it under the provision of the will relating to said fund, and, from that judicial determination which involved the ascertainment of the proper amount, no appeal was taken. All the parties to this action were parties to that proceeding except the descendant of the deceased grandchild, whose parent was a party and bound by the decree of the surrogate. That the sum of $400,000 was a proper amount for that purpose was thus judicially determined in that proceeding, and that judicial determination became binding upon all the parties to the proceeding, and was not thereafter subject to review, except by an appeal from that decree, and no appeal was taken. This was recognized by the Court of Appeals, where the court said:

"The surrogate, on the accounting of the executors, determined that the $400,000 should be set aside for that purpose. That determination has never been appealed from, and cannot now be reviewed or reversed upon this appeal."

The same claim was made on that appeal as is made now, and I think this determination prevents our reviewing the decree of the surrogate in this action. I think, however, that the court should have

directed the trustee to set apart a sum sufficient to furnish an income to pay the annuities without applying any of the principal for that purpose. The present value of the annuities has no bearing on that question. The direction in the will is that the fund set apart and invested is to be sufficient to produce the annuities. Upon the death of the annuitants the fund is to be divided among the testator's grandchildren, only retaining an amount sufficient to produce the required amount for the remaining annuitants. To produce the required amount for the remaining annuitants would require, at least, $150,000, and I think the judgment should be modified, so as to direct the trustees to retain that amount. Costs to the plaintiffs and to the respondents to be paid out of the principal of the trust. All concur.